HINMAN *against* TAYLOR:

### IN ERROR.

THIS was a proceeding under the statute of *bastardy*, (*tit.* 22.) in favour of the mother of a bastard child against the father, for its maintenance. The complaint was as follows : " To *Simeon Hart*, Esq. a justice of the peace, for the county of *Hartford*, comes *Nancy Taylor* of *Burlington* in said county, and complaint makes, and gives said justice to understand, that she is a single woman, and now with child ; and that said child, which, when born, will be a bastard, was, on or about the 14th day of *March* last past, begotten of her body, by *Joseph Hinman* of *Farmington* in said county ; and prays said justice, that she may be examined under oath, and that process may issue against the said *Joseph Hinman* agreeably to the statute entitled ' an act concerning bastards and bastardy.' Dated at *Burlington*, the 12th day of *December*, 1815.

*Nancy Taylor.*"

The complainant immediately made oath, before justice *Hart*, to the fact stated in the complaint ; and thereupon a warrant of the following tenour was issued : " To *Erastus Perry* of *Burlington*, an indifferent person ; *Greeting*.

" Whereas *Nancy Taylor* of *Burlington* in the county of *Hartford*, a single woman, hath this day made complaint and information on oath, to me, the subscribing authority, that she is now with child ; and that at *Farmington* in said county, on or about the 14th day of *March*, last past, *Joseph Hinman* of *Farmington* in said county, did beget her with child, which, when born, will be a bastard :

" These are, therefore, by authority of the state of *Connecticut*, to command you to apprehend the said *Joseph Hinman*, and him have forthwith before some proper authority, that he may be examined relative to said complaint, and be dealt with according to law. You are, also, hereby commanded to summon and give notice to *Amos Hinman*, of said *Farmington*, to appear at such time and place as you shall appoint, to defend the said *Joseph*, (the said *Joseph* being a minor under the age of twenty-one years,) if he see

*Hartford,*
November,
1817.

A proceeding under the statute of *Bastardy* for maintenance of the child, is a *civil* suit ; and the plaintiff, if an infant, must sue by guardian, or *prochein amy ;* otherwise it is ground of abatement.

cause; he being parent and natural guardian to said *Joseph*. Bonds for prosecution are given; and the state duty of thirty-four cents is paid hereon. Dated at *Burlington*, the 12th day of *December*, 1815. *Giles Humphrey*, of *Burlington*, recognized thirty dollars in due form of law. *Simeon Hart*, justice of the peace."

In pursuance of this warrant, *Joseph Hinman* was arrested, and brought before *Abraham Pettibone*, Esq. a justice of the peace. After a hearing, on the plea of *not guilty*, the justice adjudged, " that the said *Joseph Hinman* should procure bonds, with surety, in the sum of 200 dollars, for his appearance before the county court, to be holden at *Hartford*, within and for the county of *Hartford*, on the fourth *Tuesday* of *March* [then] next, to answer to said complaint, and abide the doings of said court thereon; and that he stand committed until judgment be complied with."

In the county court, the following supplemental complaint was filed: " Now, the said *Nancy* in court, supplementary to said complaint, alleges, that the child mentioned in said complaint was born on the 19th day of *December*, 1815, and is still alive; and that at the time of her travail, she was put to the discovery of the truth, and thereupon did then accuse the said *Joseph*, of being the father of said child.

By *Cowls*."

The defendant pleaded in abatement, 1. That the complainant is a minor, and does not prosecute by guardian, or next friend. 2. That the defendant is a minor; and that justice *Pettibone*, at the hearing before him, did not appoint any guardian for the defendant, to defend him in the suit; nor did the defendant plead by guardian. 3. That the process was directed to, and served by, an indifferent person, without the oath prescribed by statute (*tit.* 95. *c.* 3. *s.* 2.) being taken by the complainant, or her agent.

To this plea in abatement there was a demurrer; and the court adjudged it insufficient.

The defendant then demurred specially to the complaint and process, assigning, with other reasons which it is unnecessary to state, the same matters which had been pleaded in abatement. This demurrer was overruled; and the usual judgment for lying-in expenses, and for maintenance of the child, was rendered against the defendant.

On a writ of error in the superior court, the judgment of the county court was affirmed; and thereupon the present writ of error was brought.

*Pitkin* and *Whitman,* for the plaintiff in error, asserted, as a preliminary proposition, that this was a *civil* suit. First, it is civil in its *nature* and *object,* it being an application to a court of justice to compel the father of the child to aid in its support. 1 *Swift's Syst.* 209. *Swift's Ev.* 88. 90. *Reeve's Dom. Rel.* 278. Secondly, it is civil in its *form* and *mode of proceeding.* The plaintiff is not an informing officer, but a private individual; bonds for prosecution are given; the state duty on civil actions is paid; the bond for appearance at court is taken to the *adverse party;* amendments to the original and supplemental complaints are allowed, in the same manner, and on the same terms, as to the declaration in civil actions; the defendant need not be arraigned, nor appear in person, but may plead by attorney; the trial is never by jury; depositions are admissible; the cause of action may be extinguished by a release; if the plaintiff fail, she is subjected to costs; if she succeed, the judgment is enforced by execution, and not by warrant.

They then contended, 1. That a minor cannot sue, except by guardian, or *prochein amy.* *Co. Litt.* 135. *b.* and note 220. by *Harg. Com. Dig. tit.* Pleader. (2 C 1.) 1 *Black. Comm.* 464. *Reeve's Dom. Rel.* 264, 5. And if a minor sue in any other manner, it may be pleaded in abatement. 1 *Roll. Abr.* 287. *pl.* 3. 2 *Saund.* 212. *a.* and note (5) by *Wms.* 2 *Swift's Syst.* 200.

2. That a minor cannot plead or defend in any suit by attorney; and if he do so, it will be error. 2 *Saund.* 212. *a.* and note (4) by *Wms.* and the authorities there cited. *Com. Dig. tit.* Pleader. (2 C 2.) *Reeve's Dom. Rel.* 267,8.

3. That the process could not have been properly directed to, or served by, an indifferent person, without the party's taking the oath prescribed by the statute, *tit.* 95. *c.* 3. *s.* 2.

*T. S. Williams* and *Cowls,* for the defendant in error, denied that this was a civil action. Though the object is to enforce obedience to a civil duty, yet the form of proceeding is criminal; and it is the form which determines the question. The proceeding is upon *complaint;* and the pro-

cess is *forthwith ;* the defendant is brought before a *court of inquiry ;* and if probable ground of prosecutiom appears, he is *bound over.* All these are characteristics of a criminal prosecution. At any rate, the rule of the common law requiring an infant to sue by guardian, or *prochein amy,* is not applicable here ; for the only object of that rule, is, to give the defendant security for his costs, in case the plaintiff fails to recover ; but here the bond for prosecution affords that security in the most perfect manner. Besides, the warrant, in this proceeding, is issued only upon the oath of the complainant, after an inquiry by the magistrate ; and then the issuing of the warrant is *his* act ; so that there can be little danger of an indiscreet and vexatious prosecution.

SWIFT, Ch. J. A suit for the maintenance of a bastard child is a statutory process *sui generis,* partaking altogether of the nature of a *civil,* and not of a criminal suit. The general rules respecting civil cases are applicable to it. The plaintiff can withdraw, and is liable to cost if unsuccessful ; the defendant may plead a discharge, appear by attorney, and be defaulted. Though the process is *forthwith,* as in criminal cases, yet it resembles a criminal proceeding in nothing else. It can be prosecuted by an individual, without joining the state ; and no punishment whatever can be inflicted.

But it is said, that the suit is criminal, because the process is *forthwith,* as in criminal cases ; and it has been contended for as a universal rule, without exception, that the *form* of the process, decides the character of the action. But I apprehend no authority can be found for this proposition ; and that it is equally repugnant to reason and precedent. Suppose the legislature should authorize a *forthwith* process on a note of hand ; no one will seriously pretend, that this would convert an action of *assumpsit* into a criminal suit. To constitute a criminal suit, some punishment must be inflicted in behalf of the state.

It is an unquestionable rule of the common law, that an infant must sue by guardian or next friend. There is nothing in the statute on which this proceeding is founded, that alters the common law in this respect. The statute creates a right to commence and prosecute a civil suit ; but the party must conform to the principles of the common law in carrying

it on. As the plaintiff has not sued by guardian or next friend, I am of opinion she cannot prosecute the suit; and that the judgment of the superior court be reversed.

Hartford,
November,
1817.

Hinman
v.
Taylor.

TRUMBULL, EDMOND, SMITH, BRAINARD, BALDWIN and GODDARD, Js. were of the same opinion.

HOSMER, J. An infant, unless in certain excepted cases, must sue by *prochien amy* or guardian. *Co. Litt.* 135. *b.* note 220 by *Harg. Reeve's Dom. Rel.* 264. *Pechey* v. *Harrison,* 1 *Ld. Raymond,* 232. *Com. Dig. tit.* Pleader. (261.) That he should not sue alone, is both a disability and a privilege, agreeably to the remark of Sir *William Blackstone,* when speaking of infants. " Their very disabilities are privileges, in order to secure them from hurting themselves by their own improvident acts." 1 *Black. Comm.* 464. Their supposed want of discretion, however, is not the only reason of their incompetency to sue. Infants are not liable to costs, at law, or in equity. *Cooper's Eq. Plead.* 27. This presents a distinct ground of objection to their suits, in favour of those who might be harrassed by groundless prosecutions, and who, when successful in defence, would be without the remuneration of legal costs. An infant executor may sue with his co-executors; in which event, the executors of full age may appoint an attorney for themselves and the infant, making together one representative. *Foxwist & al.* v. *Tremaine,* 2 *Saund.* 212. This is an exception to the general rule, for a reason extremely obvious; *et exceptio probat regulam.*

The principal question in the case is, whether the suit was commenced and prosecuted, by an infant, without guardian or *prochien amy.* It has been contended, that the action on the statute of *bastardy,* is not a civil, but a criminal suit; and, of consequence, that the state is prosecutor. In my opinion, this proposition is without the shadow of foundation. The *process* under the act is not *criminal* process; the *end* of the law is the redress of a *civil* injury; and if the proceedings to enforce the plaintiff's right were precisely analogous to a public prosecution for a criminal offence, she could not prosecute *in her own proper person.*

1. The *process* in this case, under the act of *bastardy,* is not *criminal* process. It is a complaint subscribed by *Nan-*

cy Taylor. This is not the mode of prosecuting for a criminal offence; but is in precise conformity to a bill in equity. The arrest of the defendant, and bringing him *forthwith* before the court, it must be admitted, is similar to the usual practice in criminal suits. From this, however, it can no more be inferred, that the process is of a criminal nature, than it would be, if the legislature, by statute, should authorize this mode of proceeding in the collection of a book debt. The urgency of the case fully justifies the law, without the supposition that the proceeding was prescribed for a public offender, or with a view to his punishment. The criterion to ascertain a crime, is not the mere form of process, but the *nature of the act* or *omission.* If it be the violation of a public law, it is a crime or misdemeanour.

While the mind is intent on the features, which indicate the process, in the case before us, to be criminal, it is proper to attend to the various distinctive *indicia* of an opposite aspect. It is a suit by a plaintiff; on which a duty has been paid; bonds to the adverse party have been given; the defendant appears without arraignment, and by attorney; on both sides, depositions are admissible proof; the plaintiff has the entire controul of the suit; judgment is rendered as in other civil actions; execution issues in the ordinary civil form; and if the plaintiff fails, the defendant is entitled to costs. These are the unequivocal marks of a civil suit, and too pointedly distinguish it from criminal process, to embarrass the mind with the least difficulty.

2. The *end* of the law concerning *bastardy,* is the redress of a *civil* injury. This, with the preventive remedy for the protection of towns, constitutes the whole of it. The law provides for the maintenance of the bastard in aid of the mother. It requires security, by bond, to shield the town where the child is born, from its support. Here is no public wrong to be redressed; no offender to be punished; but a sum of money for the infant's maintenance is all which the statute contemplates. An action for money had and received, is no more the redress of a civil injury, than a suit to obtain the benefit of this law. To this remark it may be superadded, that the manner of obtaining the object, is definitely pointed out. It is *by suit, in behalf of the mother;* or, if she omit to sue, or prosecute, *in behalf of the town.*

*Hartford,*
*November,*
*1817.*

Hinman
*v.*
Taylor.

5. If the mode of proceeding to enforce the plaintiff's right were precisely analogous to a public prosecution for a criminal offence, she could not sue *in her proper person.* In substance, it would be a *civil* action. Every reason which can be suggested for the suit of an infant by guardian or *prochein amy*, in any civil cause, either in behalf of the infant, or of the person prosecuted, would be applicable to this. It is an unwarrantable supposition, that the criterion to decide whether a suit be civil or criminal, is *merely the form of process.* It is well known, that by the *English* law, the affirmation of a quaker is not admissible in a criminal cause. Lord *Mansfield*, in *Atcheson* v. *Everitt, Cowp.* 383. says, " No case has been found in which it, (a quaker's affirmation) has been refused, where the action, though *in form* a criminal action, *in substance* is a mere action between party and party." An appeal of murder is a private suit between plaintiff and defendant ; it is a private process for the punishment of a public crime. 4 *Black. Comm.* 312, 13, 14, 15. But the testimony of a quaker by affirmation was rejected in such a case. *Castell* v. *Bambridge & al.* 2 *Stra.* 856. " It was, to this purpose," said Chief Justice *Raymond*, " a criminal proceeding." It was determined in *Rex* v. *Turner & al.* 2 *Stra.* 1219., on a motion to quash an appointment of overseers, although the prosecution was *on the crown side, in the King's name*, that the affirmation of a quaker was admissible. These cases proceed manifestly on this ground, that not the *form of proceeding*, but the *end of the suit*, is to be regarded in the ascertainment of its real character. The court is not influenced by the superficies, but endeavours to penetrate to the core ; and when it discovers, that the object of a suit is the redress or prevention of individual injury, without any intermixture of public wrong, it considers it *essentially* as a civil action.

It is unnecessary to attend to the argument derived from the supposed analogy of our statute of *bastardy*, to the act of *Elizabeth.* There is no analogy. Although our statute, perhaps, would originally have authorized the mode of procedure in practice, under the *English* statute ; yet long usage sanctioned by the act of the legislature in 1784, (*tit.* 22. *s.* 3.) and the recent decision in *Bennett* v. *Hall,* 1 *Conn. Rep.* 417. have here established the practice of suing *in the mother's name*, and recovering judgment *in her behalf.* I have never

been able to see why the decision just cited does not settle the question in the case before us.

In every view of the subject under discussion, I am of opinion, that in the judgment complained of there is manifest error.

GOULD, J. None of the objections to the judgment below appear to me to require consideration, except the first, *viz.* that the complainant, being an infant, prosecuted without guardian, or next friend. But upon this point I think the judgment is erroneous. If, however, as my first impression was, the rule requiring infants to prosecute by guardian or next friend, were confined to *civil* suits, I should certainly be of opinion, that there was as little foundation for this exception as for the others. For I have no doubt, that this prosecution is strictly *criminal.* But, as it appears to be settled, that upon complaints of this kind, the defendant, if acquitted, is entitled to costs ; it follows, I think of course, and without reference to the character of the prosecution, that there must be some party or person upon the record, against whom the defendant may, in that event, have an execution, on which to levy them in pursuance of the judgment. For it would be a palpable absurdity, that a defendant should, in a given event, be entitled to a judgment for costs, where he could not demand an execution to enforce it. And I take the rule to be now established, that there is no case either at law or in equity, in which such an execution can issue against an infant plaintiff, or complainant. 2 *Stra.* 708.

I am aware, that according to this view of the question, it is not necessary to decide, whether the prosecution is civil or criminal. But as this has been made a leading point in the case, and as I cannot acquiesce in a position, which has been advanced, and which appears to me subversive of the only true distinction, between civil and criminal proceedings ; I will suggest my own thoughts upon the subject.

It has been said, that the prosecution is civil, because the *object,* or *end* to be obtained by it, is so. This is, perhaps, using language somewhat loosely. The end proposed is, indeed, not directly to punish the defendant, as an offender ; nor, on the other hand, is it to remunerate the complainant, for any injury sustained. It is to secure the public or the town in which the child is settled, against the burden of

maintaining it ; against the consequences of an act, which, by our law, is criminal. And it bears a stronger resemblance, perhaps, to a complaint exhibited by an individual to obtain surety for the peace, or good behaviour, than to any other proceeding known to the law : The object being in the one case to obtain security against the injurious *consequences,* and in the other against the *commission* of a crime. But not to dwell upon this topic, the proper answer to the argument I am now considering is, that the *object,* or *end,* of a legal prosecution is not the criterion by which to determine whether it is of a civil or criminal nature. It is the *form* of the proceeding, not the *cause* or *object* of it, that decides its character. This rule of distinction was laid down as the true criterion by *Rooke, arguendo,* and adopted by the court of King's Bench, in *Atcheson* v. *Everitt, Cowp.* 382. ; and it has never been denied or questioned. Now, the " form of the proceeding," within the meaning of the rule, is regularly that of the *process.* Whatever, therefore, may be the end proposed by a legal prosecution of any kind, it is, to say the least, a general rule, and one to which I know of no exception, that the *form or nature of the process* is what characterizes the prosecution.

The case of *Atcheson* v. *Everitt,* was an action of debt upon the statute 2 *Geo.* 2. *c.* 24. against *bribery.* The object of the suit, and the sole object, was the recovery of a penalty, by way of *punishment for a crime :* It was, therefore, in the strictest sense, *penal.* But as the proceeding was in the form of a civil action, commenced and carried on by *civil process,* the court held clearly, that the prosecution itself was, for that reason, essentially civil. And every analogous case has conformed to this criterion. *Wynne* v. *Middleton,* 1 *Wils.* 125. 2 *Stra.* 1227. *Calcraft* v. *Gibbs,* 5 *Term Rep.* 19.

Some confusion has been occasioned in the discussion of the case, by an incidental observation of Lord *Mansfield,* upon the first argument in *Atcheson* v. *Everitt,* and before he had formed any opinion, that actions for penalties are " in *form criminal,*" though " in *substance,* mere actions between *party and party.*" If the observation is literally inconsistent with the rule, as I have expressed it, it is equally so, with his own final opinion, and that of the whole court. It appears, I confess, to reverse the distinction between form and substance. But this is of no moment. His meaning is perfectly

obvious, and the rule ultimately adopted in that case, by the whole court, and recognized in all the others, which I have cited, is, that though the object and consequences of a prosecution may be exclusively criminal ; yet the prosecution itself is, essentially and merely, civil, *if the form of the proceeding* is so : That is, the prosecution, in such cases, is civil, *because* it is in the form of a civil action ; or, in other words, because it is commenced and carried on by *civil process.* For if the defendant *Everitt,* had been prosecuted by *indictment,* or *information,* for the same offence ; the prosecution would, unquestionably, have been *criminal.* On the other hand, a prosecution commenced by *criminal* process, is, according to the same rule, for that very reason, a *criminal* proceeding ; though if it were in the form of a *civil* action, it would be civil. This is the settled distinction, in prosecutions *qui tam.* Hence a *qui tam action* (*i. e.* a *qui tam* suit by civil process,) is *civil :* a *qui tam information* is *criminal.* And the characteristic distinction between them, is, merely, that the latter, (to use the language of *Blackstone,*) is " carried on by a *criminal,* instead of a *civil,* process." (4 *Comm.* 308.) Indeed, in all prosecutions for penalties, if the recovery is sought by *action,* the proceeding is *civil* ; if by *information,* it is *criminal.* This distinction is undeniable. Now, to apply the distinction : The present prosecution was commenced, as every other, on this statute, must be, by precisely the same process, as is issued upon indictments and informations, *viz.* by a *criminal capias,* or what we usually term a *forthwith* process. The process can issue only upon complaint, made by the prosecutor, under *oath* ; as in the cases of search-warrants and complaints to obtain surety for the peace : it is returnable, not at a distant future day, as all writs in civil cases are, but *immediately :* the return is made to a court of *inquiry* ; a proceeding, known in *criminal* cases only. The defendant is entitled, by law, to no previous fixed term of notice, as defendants in all civil cases are ; but may be required to make answer, *instanter,* upon being arrested and brought before the magistrate : he cannot be admitted to bail, by the officer who makes the arrest, as every defendant arrested in a civil action may be ; nor can he be in any way enlarged, pending the prosecution, except by the court or magistrate, and upon the same species of recognizance, as is required,

exclusively, in *criminal* cases. If the court of enquiry find probable cause for prosecution, he is *bound over,* or committed for trial, as in cases of indictment or information ; and upon conviction, the judgment may be, and usually has been, a *capiatur,* under which he is to stand committed, until the order of the court be complied with. Now, in no civil case whatever, is any one of these proceedings possible. It may be said, indeed, that the judgment is not necessarily a *capiatur,* it having been determined that the mere awarding of execution, as in civil actions, is legal. But, it is to be recollected, that the same course has been taken and sanctioned, for the collection of *fines,* inflicted upon *informations* filed by public prosecutors. It is sufficient for the purpose of the argument, that the judgment *may* be a *capiatur.*

Again, it is said, that bonds for prosecution are entered, and state duties paid upon all prosecutions of this kind, and that amendments have been allowed in them. Such, I admit, has been the practice ; but the same practice in each of these particulars, has been adopted, in *qui tam informations,* which are confessedly criminal, and were expressly decided to be so by the superior court, in 1810, in the case of *Meacham* q. t. v. *Beckwith,* and afterwards by this Court, upon a writ of *mandamus,* to compel the judges of the common pleas, to record the first verdict found in that case.

It is still further urged, that in prosecutions like the present, the defendant may, in the common pleas, appear and plead by attorney. But a defendant *indicted* for a new misdemeanor, may, and often does appear, and plead in the same manner, both in the *English* practice, and our own. 4 *Black. Comm.* 375. 1 *M'Nall.* 59.

Is there, then, in this case, a single feature of a *civil* suit? It has not one characteristic property, or incident, which does not appertain to a criminal prosecution. It bears no more resemblance to a *civil action,* than an indictment does. It is, strictly, an *information,* accompanied with all the distinguishing forms and incidents of a criminal proceeding ; and can, therefore, be no other, than a criminal prosecution.

For reasons already given, however, I concur in the opinion, that the judgment ought to be reversed.

Judgment reversed.