COTTOM (UNITED STATES v.). See Case No. 14,873.

## Case No. 3,269.

### In re COTTON.

[2 N. Y. Leg. Obs. 370; 6 Law Rep. 546.] [1]

District Court, D. Connecticut. Nov. Term, 1843.

#### "DEBTS" IN BANKRUPTCY.

The petitioner for a decree in bankruptcy sought to be discharged from two judgments (the only two claims inserted in his schedule),

[1] [6 Law Rep. 546, contains only a partial report.]

one of which was obtained under the provisions of the statute of Connecticut, whereby he was ordered to make certain quarterly payments for the maintenance of a bastard child, of which he had been adjudged the putative father; and the other was for damages recovered in an action for seduction. *Held*, that these judgments were not "debts," within the first section of the bankrupt act, and the petition was accordingly dismissed.

[Cited in Re Lachemeyer, Case No. 7,966.]

This was a voluntary application for the benefit of the bankrupt act [of 1841 (5 Stat. 440)], presented on the 4th day of February, 1843. The petitioner [Samuel S. Cotton], being a minor under the age of 21 years, presented his petition by Joseph Cotton, his parent and natural guardian. There were only two debts stated in his list, one to Harriet Francis, and the other to John Francis. The cause came to its hearing for a decree in bankruptcy at the March term, when Harriet and John Francis appeared and filed the following objections against the decree in bankruptcy: (1) That at the time of filing the application the petitioner was a minor; (2) that the claim of Harriet Francis was for the maintenance of a bastard child, the petitioner having been adjudged the putative father; (3) that the claim of John Francis was for the seduction of his daughter, now resting in a judgment recovered in an act of trespass on the case; and (4) that this last judgment was not perfected when the petition was filed, because the bill of costs had not been taxed until the day subsequent to the presentation of the petition. The verdict had been rendered and recorded before.

Welch and Backus, for petitioner.
Strong and Foster, for creditors.
Cur. ad. vult.

JUDSON, District Judge. The principles involved were of so much importance, and being entirely without precedent, the decision has, from time to time, been postponed for deliberation; and during this period the court had availed itself of the aid of one of the most learned jurists in the country.

The questions now recur, and in disposing of the case the first and fourth objections may be passed by without any determination. The other questions having been settled, there is no necessity of discussing those. It may not be improper here to remark that the petitioner's counsel made an application for the adjournment of these questions into the circuit court. For causes not necessary to be stated, this court has been obliged to deny that motion, and proceed to a determination of the case at this time.

In support of the second and third objections, the record of the two cases specified in those objections is brought up, and on inspection it is found that the first proves to be a prosecution on the statute of Connecticut against bastardy. Therein, the petitioner is alleged to be, and is adjudged, the putative father of the child of Harriet Francis, one

of the objectors. By this judgment, the petitioner has been ordered to support that child by the several quarterly payments therein specified, and the petitioner puts this judgment in his list, as a debt from which he seeks a discharge, under the provisions of the bankrupt law of the United States, passed August 19th, 1841 [5 Stat. 440]. This question is now to be discussed by the construction to be given to the term "debt," as used in the first section of the act. The provisions of the act are, "All persons whatever owing debts," &c. On the side of the petitioner, it is urged that this has passed into judgment; it is a judgment debt, and may, like any other debt, be barred by a bankrupt certificate. In aid of this construction, Hinman v. Taylor, 2 Conn. 357, has been cited, as conclusive authority. The point determined in that case is that as the prosecutrix was a minor, and as the suit was a civil suit, and not criminal, it should have been by prochein amy or guardian. From this authority it has been urged that a judgment in bastardy is but a judgment in a civil suit, and therefore is a debt of record,—a judgment debt,—a "debt," within the meaning of that term, as used in the act of congress. To the full extent of that case, its authority will not be doubted, but it will be readily perceived that the authority of that case reaches only to the forms of the law. It was not decided that the maintenance of an illegitimate child is itself a debt, but the process of enforcing this maintenance upon the putative father is regulated by statute, and the process, in its form, must be civil. It may be quite otherwise in different states, for there, as here, the form of the proceeding would be regulated by statute. In the present case, it will be too much to say that the court is bound by the formula —the dress—the garb it wears when it comes here for justice. We must look at the nature of the liability,—the original cause of action. One of the learned judges in that case said, "These cases proceed manifestly on the ground that not the form of proceeding, but the end of the suit, is to be regarded in the ascertainment of its real character. The court is not influenced by the superficies, but endeavors to penetrate to the core." This language was appropriate and exceedingly adapted to the matter in hand. It is deemed equally adapted to the present question. The counsel argue that this is not a judgment debt; it is in its drapery, but in its substance it cannot be called a debt. To support a natural child is a duty, but is not a debt, in the sense of the common law, or the statute of bankruptcy.

A child born in lawful wedlock has a right to claim of its father protection, support, and education; and these are all duties, in their nature and essence, similar to the duty which the natural father owes his illegitimate child, yet it cannot be admitted that these duties would be avoided or discharged by a decree in bankruptcy. They are not provable un-

der a commission in bankruptcy. The father, having obtained a certificate of discharge under the bankrupt act, could never plead that discharge, and avoid the duty to protect, support, and educate his child born in lawful wedlock, because those duties are not debts, within the meaning of the act. The same reasons apply to this case.

So far as forms are concerned, it was decided in Atcherson v. Everett, being an action in debt on St. 2 Geo. II. c. 24, against bribery, that it was a civil suit for the penalty attached to that crime. The form of action adopted in this case, to enforce the right, was civil, but the cause of action itself, no one can pretend, was debt. The definitions of that term, given in the books of law, are most of them definitions of the action of debt, rather than debt itself. Applying the significant language, above quoted, to this case, we may see that the rights of the parties are not to be "influenced by the superficies," but we must look into the nature of the claim. To show that the petitioner seeks a construction not warranted by the practice of the courts in Connecticut, we must look to the termination of the proceedings in a bastardy case. When a debtor is committed to jail for a debt, he may avail himself of the poor debtor's oath, and go free, but, when committed on a bastardy proof, he cannot take the poor debtor's oath. If the counsel claim this to be a debt, because the suit is civil, then this claim is no more than overbalanced by the experience, which is universal, that when committed he cannot swear out of jail. There has been no diversity of opinion in regard to that proposition.

Third objection: John Francis, the father of Harriet, interposes another record, from which it appears that a judgment has been recovered for seduction, and that record constitutes the foundation of the third objection. The arguments are much the same, as were urged on the second objection, though with much more apparent confidence. If the judgment only is to be inspected, and the original cause of action can be excluded from consideration, then this would be a debt, and no further doubt could remain, but we have no rule which prohibits the inspection of the whole record. Taking the record as it is, displaying the cause of action, and the nature of the injury, there was no such debt due John Francis as the statute contemplates. Suppose this claim had not been passed through the forms established in such a case. Suppose no action had been brought by John Francis prior to the filing of the petition. Nevertheless, the claim, the injury, was there; the liability was resting on and against Cotton, but it was not a debt, in any sense. It was an injury, a wrong, — trespass;

and an action of trespass on the case is the "superficies" thrown around it, only for the purpose of giving it shape and form, not to change the nature of the wrong, for that is, and always will be, seduction. To place the matter in its true light, the petitioner comes here saying, "I have seduced, by my promises and my arts, a young and confiding female,—have robbed her of virtue and character. I confess the wrong, but will have my discharge from this debt by being declared a bankrupt." In the history of every bankrupt law, no such claim was ever sustained. There is no precedent for any construction ever given to the word "debt," used in the bankrupt act, as the petitioner claims. We might as well contend that assault and battery with intent to kill, slander, libel, or burning another man's house, were debts. Each and all those wrongs, by process of law, may be put into judgment. So also is a vast variety of cases, where a penalty is forfeited by statute, and the action of debt may be maintained for that penalty, or by action on the statute, which is equally a civil action. In the case of horse stealing and other larceny, treble the value of the goods stolen is forfeited to the owner. So, in case of forgery, the party injured may recover double damages, and the action of debt may be brought to enforce the penalty. The statement may embrace the numerous cases where fines are imposed, on the conviction of crimes. If the state should be desirous, after conviction, of securing the payment of a fine thus imposed, there can be no objection to the action of debt, upon which property may be attached, and the execution levied. It will follow from the suggestions that all these forfeitures and penalties are debts, within the provisions of the bankrupt act, to be discharged by the certificate, if the petitioner's claim be well founded.

Misprision of treason, manslaughter, and bribery have attached to their commission a fine of $1,000; sending a challenge, $3,000; assault and battery, $1,000, &c. According to the claim of the petitioner, in all these cases, and a vast variety of others, the state would become a creditor, and the criminal a debtor. Assuming these new titles, the offender might, were the bankrupt law in existence, march into court with his petition, and rid himself of the penalties of crime, as well as his contracts.

Standing as this case does without precedent, the court will adopt that construction which shall not encourage evil and crime, but promote virtue and protect innocence. The second and third objections are sufficient causes shown against decreeing Samuel S. Cotton to be a bankrupt. Decree denied and petition dismissed.