## Hoit *v.* Cooper.

The town of Newton, instituted a prosecution against one R., as the putative father of two illegitimate children, the mother being a pauper, having her legal settlement in said town ; which prosecution was voluntarily compromised and settled by said R. giving to the plaintiff. who was one of the selectmen of said town, and acted as agent in behalf of the town, the note of said R., for an amount agreed upon, payable to the plaintiff, and at the same time R. executed a mortgage of certain personal property to the plaintiff, as security for said note. On a subsequent attachment of the property by the defendant, as an officer in behalf of a creditor of R., it was *held,* that it was competent for the plaintiff to adjust the prosecution with R., for the benefit of the town, and receive the note and mortgage as indemnity for the past and security for the future.

The assent of the town to the agency of the plaintiff would be presumed, conferring full authority on him to commence an action of trover, to recover of the·defendant the value of the property embraced in the mortgage, and converted by the defendant.

TROVER. The plaintiff claims the value of certain personal property: viz., One pair of oxen, two cows, four yearlings, three calves, and thirty tons of hay, all the property of the plaintiff, and which the defendant is charged with wrongfully taking and converting to his own use, on the 2d day of October, 1858. Plea, the general issue.

The plaintiff offered in evidence, that said property originally belonged to one Michael Riley, of Swanzey, in this county; that on the 22d day of May, A. D. 1858, he

made and delivered to said Hoit his promissory note for $400, payable to him, or order, on demand, with interest annually; that for the purpose of securing said note, Riley, on the same day executed a mortgage of the property aforesaid, to the plaintiff. The mortgage is in usual form, has the affidavits of the parties who subscribed to it, of a debt due from the mortgager to the mortgagee, duly certified, and was also recorded on the same 22d day of May, in the town-clerk's office in Swanzey. The defendant justified the taking of said property, as a deputy sheriff, attaching the same on a writ in favor of one Combs, to whom Riley was indebted on his note to said Combs, dated 31st March, A. D. 1857, and who claimed that said mortgage was void, and said note was without consideration.

To prove the consideration of said note, the plaintiff offered evidence tending to prove that on the 14th day of May, 1858, the plaintiff and Gilman Bartlett, as selectmen of the town of Newton, in this State, made their complaint in due form, in behalf of the said town of Newton, before Elijah R. Currier, then a justice of the peace throughout the State, and resident in said Newton, that one Ruth Ann Stevens had been delivered of two illegitimate children, chargeable to Riley, and that said Ann had neglected to make her complaint against him, and that she was then and there a pauper, chargeable to said Newton, and was supported by said town. Currier, on the same day, issued his warrant directing the officer to bring Riley before him, or some other justice of the peace for Cheshire county, to answer to said complaint; whereupon, on the 21st of said May, he was duly arrested and taken before Edward Farrar, a justice of the peace for Cheshire county, and was arraigned and plead guilty to the charge contained therein, and was ordered to furnish a bond in the sum of $400, with sufficient sureties, to appear at the then next term of the court in the said county, as the law required. Riley did not procure said bond,

but on the next day voluntarily gave his said note and mortgage to the plaintiff to settle said claim, Hoit telling Riley that he would never hear any thing more from said complaint, and accordingly no further proceedings were had in court upon said complaint. Hoit testified that he was one of the selectmen of Newton, in 1858 and 1859, that he acted in this matter in that capacity as the agent and trustee of the town of Newton, and without any special vote of the town, conferring authority upon him. He also stated that the town of Newton had expended the sum of $313, prior to March last, for the support of said Ruth Ann Stevens, and her two children, including incidental expenses incurred on their account; that said note was made payable to himself, pursuant to the advice of counsel, as the more safe and convenient mode of executing said deed of mortgage, and making it available as security, but that said note was the property of the town, and the action thereon was prosecuted for the benefit of said town. Upon the foregoing facts, the defendant excepted to the affidavit of the mortgage, and to the warrant of the magistrate as defective in form and substance; and to the note, as without consideration, and that sufficient evidence had not been offered to show that said Ann was a pauper of the town of Newton. These objections the court overruled, and the jury, having returned their verdict for the plaintiff, the defendant moved that, for the foregoing reasons, the verdict be set aside, and a new trial be granted.

*Wheeler & Faulkner*, for the plaintiff.

1. The Revised Statutes (chap. 68, secs. 7, 8,) give to the selectmen of towns authority to make complaint in cases like this. The warrant was in the usual form, and no exception is taken as to the regularity of the proceedings before the magistrate. Had the case not been compromised, the defendant would have been obliged to furnish security to the town and pay the costs, or lie in jail.

2. The compromise of the prosecution formed a good consideration for the note. *Parker* v. *Way,* 15 N. H. 45. This was such a settlement as the selectmen had a right to make under their general powers, without special authority conferred by vote of the town; and the town could not avoid the settlement. The town, moreover, has ratified the settlement by abandoning the prosecution and instituting this suit.

3. Whether the settlement could be avoided by the town, or not, it is good as against Riley; he made it voluntarily, to compromise a civil action, and cannot be heard to say that the selectmen exceeded their authority, and had no right to make it—the town making no objection. *Parker* v. *Way,* above cited.

4. The affidavit upon the mortgage was legally true and sufficient. *Lathrop* v. *Blake,* 23 N. H. 46. The debt was due from Riley to Hoit, as agent or trustee of Newton, but it was not necessary that his agency, or the capacity in which he acted, should be stated.

5. The evidence that Ruth Ann was a pauper of the town of Newton, was sufficient to warrant the jury in finding that fact; but no evidence on this point was necessary. The complaint may be made by the town in which the mother resides, whether the mother have a legal settlement there or not, or whether she be a pauper or not. *Warren* v. *Glynn,* 36 N. H. 424. It is the liability of the town to be charged, in the first instance, with the support of the bastard, on which the right of the town in which the mother resides, to make complaint, is based.

*Lane,* for the defendant, quoted *Cole* v. *Grover,* 6 East. 110; *Weld* v. *Griffin,* 5 Esp. 141; *Townsend* v. *Wilson,* 1 Camp. 398; *Weeks* v. *Hill,* 39 N. H. 199.

NESMITH, J. Under the authority of the 7th and 8th sections of chapter 173 of the Compiled Statutes of this State,

selectmen of towns can make their complaint before some competent magistrate against the putative father of any bastard, charging him with having begotten the same. Upon this complaint a warrant issues, in due form, under the hand and seal of the magistrate, directing such person, so charged, to be brought before some justice of the peace in and for the county in which the offence was committed, or in which such offender may reside. If found chargeable, the offender shall be ordered to give security to save the town harmless from the maintenance of such child, and to pay all costs of prosecution, and to stand committed until such order shall be performed. The process that originally issued in the case before us appears to have been in conformity with the requisitions of the aforesaid sections. But Riley, whom the defendant represents, might properly have urged that Elijah R. Currier, who issued this process against him, was then a resident of the town of Newton, the prosecuting town, and therefore disqualified, by reason of his presumed interest, to initiate proceedings against him. This objection, to have availed Riley, should have been taken at an early stage of the proceedings, when first arraigned before the magistrate of Cheshire county, upon the complaint, and when asked to plead to the charge alleged against him. But, as he then took no exception, and pleaded generally to the charge, he is now considered as having waived his privilege, and it is now too late to set up this matter of defence in this action. *Warren* v. *Glynn*, 36 N. H. 424; *People* v. *Clark*, 21 Barb. 214. Again, the defendant denies to the parties in interest the power to settle proceedings of this character, and urges that the note given by Riley is without consideration, or illegal and void. It may be conceded that if this process were treated by our law as criminal in its character, and this charge as an offence against the public, then settling or compounding a matter of this kind would be an

illegal act, and a promissory note given for the purpose of securing the object of such settlement would be considered void. But it has been decided that the intention of the statute on this subject, and the proceedings under it, are to give redress as and for a civil injury, and therefore it is no offence to adjust or compound a prosecution of this nature. In *Marston* v. *Jenness*, 11 N. H. 156, the court say that the intent of our statute is to compel the putative father to aid the mother in the support of the child, and to provide security to the town liable to maintain it.

For the purpose of affording this redress, the Legislature, as they undoubtedly may, in cases of civil injury, have deemed it expedient to authorize the employment of process usually applicable to criminal proceedings alone. The purpose to be obtained is an indemnity. As soon as this is furnished, the object of the law is attained. The rules of civil proceedings are applicable to complaints under this act, and they are to be treated substantially as civil remedies. So long as the respondent remains in court, and asks for delay, he gives his bond to abide the order of court. This operates both as present security and future indemnity, so long as the charge is contested. When, at length, a conviction is obtained, and a final order for support is passed, the bond to secure the performance of the order becomes the usual legal remedy.

But whenever the liability of the party charged, as, in this case, is admitted, and it may be for the advantage and convenience of the parties in interest to adopt means other than the bond, as the security or indemnity to the party injured, we see no objection to resorting to them. The statute does not specify any particular form of indemnity.

In this case, a compromise is made by the voluntary consent of Riley, upon his confession of his liability, freely made. And we think it was competent for the jury to

find a good consideration for the note given by Riley, and a binding promise on the part of the respondent to pay it, upon the facts aforesaid, and connected with the other fact that the town forbore to prosecute further their complaint against him.  *Parker* v. *Way*, 15 N. H. 45.

In this case, the amount of the penalty of the bond, as fixed by the magistrate, was made the consideration for the note given as a settlement, an amount not oppressive, or over liberal for the support of two children and the incidental costs.  All charges for and on account of the past and future maintenance of the children, became just matters of settlement, and were taken into account.  The practice in many of the States, under statutes similar to ours, has been to treat prosecutions of this nature as civil suits, and to settle them accordingly.  The obligations resting on the putative father are a sufficient consideration for a settlement, in part for the benefit of the mother. *Davis* v. *Moody*, 15 Georgia 175.

In Illinois, prosecutions under the bastardy act may be compounded, or compromised, at the discretion of the parties.  *Colman* v. *Francia*, 3 Scam. 378.

In Vermont, a note given by a putative father, on a surceasing of the suit or complaint prosecuted, is on sufficient consideration.  *Haven* v. *Hobbs*, 1 Vt. 238; *Holcomb* v. *Stimpson*, 8 Vt. 141; *Hinman* v. *Taylor*, 2 Conn. 357; *Morrison* v. *Dyer*, 2 Gr. 165.

In Kentucky, the court say the proceedings are not in the nature of criminal process; they are for the benefit of the mother, and to enforce a natural duty.  17 U. S. Dig. 403.

But it is objected that Hoit should not have taken the note, payable to himself, and that the deed of mortgage, given to secure said note, is also invalid.  We have seen that it is made the duty of selectmen to initiate proceedings of this kind for the benefit of their towns.  It is also within the scope of their general powers to make settlements for the like object, and by such acts the

town would be bound. It is competent for the town in such cases to adopt and ratify the acts of their agents. In this case, the town of Newton have assented to and ratified the doings of Hoit, by abandoning the prosecution against Riley, and confirmed the settlement then made by authorizing and prosecuting this suit.

The case finds that the note was made payable to the agent, rather than to the principal, and that the deed of mortgage of personal property, executed by Riley as security, at the same time, under the advice of counsel, was made to him as the more safe and convenient mode of giving security to the town. As the town does not seek to repudiate the acts of their agent, but to enforce them, it does not now lie in the power of Riley, or the defendant, to aver want of capacity in Hoit, so long as he went voluntarily into the compromise, and has enjoyed the full benefit of the clemency and forbearance of Hoit. That Hoit had authority for his acts, on this occasion, see *Lathrop* v. *Blake,* 23 N. H. 46; *Glidden* v. *Unity,* 30 N. H. 105; *Parker* v. *Way,* 15 N. H. 45.

It is objected by the defendant that Ruth Ann Stevens was not a pauper of the town of Newton. There was evidence before the jury that she stood in need of immediate relief, and that the town, by their selectmen, had furnished a large amount in supplies toward her support, and also her children. It is settled that a complaint of this kind may be made by the town in which the mother resides, whether the mother have a legal settlement there .. or not, or whether she is actually a pauper or not.

The statute protects the towns against the liability to be charged, and authorizes this process to issue for that purpose. *Warren* v. *Glynn,* 36 N. H. 424; *People* v. *Corbett,* 8 Wend. 527.

The last was a suit on a recognizance, given under the bastardy act of New-York, for the security of the mother and town against the putative father of the child.

The Court say : " It was not necessary for the plaintiff to show the settlement of the mother, nor prove the actual expenditure of money to support the child, in order to entitle the plaintiff to recover. The order and recognizance were *primâ facie* evidence of the child being chargeable, and the necessity of their having been maintained by the town." So in this case it is not competent for the defendant to raise this objection.

After the acknowledged liability of Riley, on his part, we do not think, under this action, the defendant can call upon the plaintiff to show the settlement of the pauper, or the amount expended on her account, or for her illegitimate children.

Again : Our attention has been called to the three English cases, giving a construction to chapter 31, act of George II. The object of the statute appears to have been in its terms analogous to our statute, to give indemnity to cities, towns and parishes, against the father for the support or the liability to support the mother, or their illegitimate children. The English statute is more restrictive in its terms than our statute. We understand each of the decisions to be founded upon promissory notes, given originally by the putative father, through the intervention of settlements made by and with the overseers of the poor of the parishes where they severally resided, and to indemnify their said parishes against the liability to support illegitimate children.

The courts, in each case, sustain the right of action, but limit the amount to be recovered to the actual' expenditure up to the time the action is commenced. They sanction the validity of the settlement by note, but apply the remedy only to past expenditures.

They discriminate in this form, because, they say, the overseers of the poor should not be entrusted with the power of laying a wager upon the continuance of the child's life. *Cole* v. *Gowen*, 6 East 110, is understood to

be the leading case on this subject. *Ellenborough,* C. J., there says: "It would be a shocking consideration, that by means of such a security as this, the parish officers, who have a public duty to perform, that the father shall make a proper provision for the maintenance of the child, should acquire an interest that the child should live as short a time as possible." "Considering the security, as given to the parish officers only, in their individual capacity, it is giving them a temptation to deal with negligence, at least, in that most important trust — the care of children of tender age—which is committed to them."

Judge *Grose* says: "The parish officers cannot convert a power, given them for the mere purpose of indemnity, into a matter of bargain and speculation upon the life and death of the child, thereby making it the interest of the the parish to get rid of the child as soon as possible." "Though nothing of that sort appears in the case before the court, yet out of court such things have been heard of, and it is obvious they may happen." Now, with due deference to authority, we ask to be excused from adopting the decision in this case; much more the reasons assigned for it. We think, in this age of civilization and humanity, it would be cruel and absurd to adopt a rule of action for our overseers of the poor which would imply that, for the selfish motive of gain, they might be induced to jeopardize or sacrifice the lives of children entrusted to their official care.

As we understand the proof in this case, we are not at liberty to entertain the presumption of the existence of any abuse or misappropriation of funds by the agent of the town; or that our decision upon the merits of the case, as before indicated, would tend to produce any public injurious results in that direction. We, therefore, dismiss the foregoing English decisions, and submit them to the test of the approved maxim: "*Lex plus laudatur, quando ratione probatur.*"

*There must be judgment on the verdict.*